***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted October 21, 2022, affirmed January 5, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LUIS HERRERA-ALVAREZ,
*Defendant-Appellant.*

Marion County Circuit Court
18CR78570; A176086

Cheryl A. Pellegrini, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Hellman, Judge, and Landau, Senior Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant was convicted, after a stipulated facts trial, of driving under the influence of intoxicants (DUII) and first-degree manslaughter, among other offenses. On appeal, defendant presents a single assignment of error, challenging the trial court's imposition of the mandatory minimum 120-month prison sentence under ORS 137.700 (2)(a)(E) for his first-degree manslaughter conviction. He asserts that, as applied to him, that sentence is unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution.[1] Because we observe no constitutional violation in defendant's sentence, we affirm.

We review whether a sentence is constitutionally disproportionate under Article I, section 16, for legal error. *State v. Hawthorne*, 316 Or App 487, 502, 504 P3d 1185 (2021), *rev den*, 369 Or 856 (2022). "In conducting that review, we are bound by any findings of historical fact that the trial court may have made, if they are supported by evidence in the record." *Id.* at 502. When rejecting a proportionality challenge to a sentence, a trial court's consideration of a defendant's mental disability is sufficient if the court "appreciate[s] its constitutional implications" by "address[ing] the defendant's intellectual disability in comparing the gravity of [the] defendant's offense with the severity of the * * * sentence." *State v. Ryan*, 361 Or 602, 624-25, 396 P3d 867 (2017) (*Ryan I*); *see also State v. Ryan*, 305 Or App 750, 764, 473 P3d 90 (2020) (*Ryan II*) (recognizing that standard).

Defendant's claims arise from stipulated facts that he drove under the influence of alcohol and crashed into a vehicle, which crashed into another vehicle, causing the death of one person, and injuring four others. Following his stipulated facts trial, the court convicted him of various offenses, including first-degree manslaughter. It then sentenced him to the statutory mandatory minimum 120-month prison term for the manslaughter conviction. Because defendant claimed that his 120-month term sentence was disproportionate in light of his criminal history and of "mitigating" aspects of his "situation," the court conducted an

---

[1] Article I, section 16, provides that "all penalties shall be proportioned to the offense." Or Const, Art I, § 16.

assessment of the constitutionality of that sentence. *See State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009) (Article I, section 16, proportionality analysis requires the court to observe three factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."). Considering the stipulated facts and defendant's three psychological evaluations—which concluded that he had borderline intellectual functioning—the court determined that defendant's 120-month term sentence was constitutional and appropriate.

On appeal, defendant asserts, as he did below, that his sentence was disproportionate to the gravity of the offense under *Rodriguez/Buck*. *See Ryan I*, 361 Or at 623-26 (applying the *Rodriguez/Buck* factors). Defendant specifically contends that the trial court failed to appropriately consider the extent to which his intellectual functioning reduced his culpability when sentencing him. *See id.* at 620-21 (noting that "a sentencing court must consider an offender's intellectual disability in comparing the gravity of the offense and the severity of a mandatory prison sentence" when conducting the "proportionality analysis"); *see also Ryan II*, 305 Or App at 770-71 (a defendant's intellectual disability bears on "the degree of culpability of [the] defendant's conduct"). Defendant further contends that the court erred in relying on his prior criminal history of DUII because it is possible that his borderline intellectual functioning impaired his ability to learn from past experience.

The state contends that the trial court correctly imposed the 120-month mandatory minimum sentence on defendant's conviction for first-degree manslaughter. It argues that, contrary to defendant's assertion, the court addressed defendant's mental abilities and made the necessary factual determinations when concluding that his borderline intellectual functioning did not reduce his culpability. *Compare Hawthorne*, 316 Or App at 503 (a trial court "must address on the record a defendant's intellectual disability in comparison to the gravity of the offense"), *with Ryan II*, 305 Or App at 761 (not all "intellectual impairment invariably reduces a defendant's culpability or the offense's gravity"); *Ryan I*, 361 Or at 621 ("a sentencing court's findings" as to

"an intellectually disabled offender's level of understanding of the nature and consequences of his or her conduct and ability to conform his or her behavior to the law[] will be relevant to the ultimate legal conclusion as to the proportionality *** of a mandatory prison sentence").

We agree with the state's observations. Assuming—as defendant claims—that the court was required to assess whether his intellectual functioning reduced his culpability under *Ryan II*,[2] we observe that not only did the court do so, but its conclusions are supported by the record. First, the court's *Rodriguez/Buck* assessment addressed the severity of defendant's sentence with respect to the nature of the offense and character of the circumstances as required by *Ryan I. See* 361 Or at 620-21. In conducting that assessment, the court expressly stated that it was addressing defendant's claim to consider whether his "functioning [was] relatively low *** [compared] to the bulk of society[,]" rendering his sentence "more severe than what is properly allowed by [the Oregon] Constitution." More specifically, the court expressly assessed whether the ORS 137.700(2)(a)(E) minimum sentence was "a more severe sentence than [] would be appropriate considering [defendant] and who he [was] and the manner in which the *** offenses *** occurred and his background." As such, we understand that the court appropriately considered defendant's mental disability—as required by *Ryan I*—and assessed his culpability in light of his mental functioning—as required by *Ryan II*.

Second, the evidence in the record—including defendant's stipulated facts and his psychological evaluations—supports the court's conclusion that looking at the nature and character of the circumstances, the severity of defendant's sentence was not disproportionate. *See Ryan I*, 361 Or at 625 ("case-specific factors, including the nature of defendant's conduct [and] its effect on the victim *** are relevant considerations in making the proportionality comparison under *Rodriguez/Buck*"). Defendant stipulated that he

---

[2] We note that both *Ryan I*, *Ryan II*, and the reviewed case law address proportionality in a context of mental disability rather than borderline mental functioning. In this case, we do not assess whether defendant's mental ability meets the legal threshold for a mental disability. Instead, for the purpose of our review, we assume it did.

acted recklessly and was responsible for his conduct, which caused injury to four persons and the death of another. He also stipulated, as the court noted in assessing the adequacy of his sentence, that during the specific time of the incident, he was under the influence of alcohol and his blood alcohol level was .17 percent, which is beyond the legal limit. Further, defendant stipulated that he left the scene without checking on the condition of the victims and later provided a different birthdate to the police and initially denied his prior history of DUII. As for defendant's psychological evaluations, those included facts that indicate—as the court considered during sentencing—that during the relevant times, defendant was able to, among other things, keep jobs, maintain his finances, care for himself, and assist others. The evaluations suggested that defendant was able to understand the consequences of his conduct before and during the incident and that his borderline intellectual functioning did not impair his adaptive functioning.

Moreover, assessing the nature of the offense, the court considered defendant's stipulated facts and concluded that he could have made choices that would have led to different results. *See Ryan I*, 361 Or at 621 ("[A] sentencing court's findings, among other factual considerations, as to an intellectually disabled offender's level of understanding of the nature and consequences of his or her conduct and ability to conform his or her behavior to the law, will be relevant to the ultimate legal conclusion as to the proportionality— as applied to the offender—of a mandatory prison sentence."). Assessing the character of the circumstances, the court considered the information in defendant's psychological evaluations and concluded that, while intellectual deficits may impair one's ability to live in the world or take care of oneself and follow the laws and be successful, that was not defendant's circumstances. *See Atkins v. Virginia*, 536 US 304, 318, 122 S Ct 2242, 153 L Ed 2d 335 (2002) (a finding of "mental [disability] require[s] not only subaverage intellectual functioning, but also significant limitations in adaptive skills"). We thus observe that the court's conclusion regarding defendant's culpability in assessing the proportionality of his sentence is supported by the record.

Because we conclude that the court did not err in its assessment of defendant's culpability, we need not address defendant's second argument concerning whether the court erred in relying on his prior criminal history when sentencing him. That argument, as noted, is premised on the theory that his intellectual ability prevented him from learning from past experience, a premise at odds with the court's culpability determination, which we have sustained.

In sum, the court did not err in imposing the statutory minimum sentence in defendant's case.

Affirmed.